UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOSLEY L. RUSSELL,

      Petitioner,      Case No. 1:08-cv-196

v.                 Honorable Richard Alan Enslen

MICHIGAN DEPARTMENT OF
CORRECTIONS,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, I recommend that the amended petition be dismissed for failure to raise a meritorious federal claim.

**Discussion**

I.        Factual allegations

Petitioner is incarcerated at the Boyer Road Correctional Facility. He is currently serving a one-and-one-half to fifteen years sentence for four counts of retail fraud. (Br. in Supp. of Am. Pet. ("Br."), viii, docket #8.) The trial court sentenced Petitioner on September 17, 1998. (*Id.*) Petitioner, however, does not challenge his conviction or sentence. Instead, he challenges the denial of his right to receive a parole hearing. (Am. Pet. at 2; docket #7.)

On December 23, 2003, the Michigan Department of Corrections (MDOC) released Petitioner on parole. (Br., viii.) In accordance with his parole, Petitioner received supervised release for two years. (*Id.*) On October 27, 2005, however, the police stopped and searched a vehicle that Petitioner occupied as a passenger and found a B.B. gun. (*Id.*) As a result, the Michigan Parole Board revoked Petitioner's parole on December 8, 2005. (*Id.*)

After being incarcerated for two years after his parole revocation, Petitioner filed a grievance through the three-step grievance process to obtain a parole hearing. (Ex. A to Am. Pet., docket #7.) Petitioner alleges that the Michigan Parole Board inappropriately applied the Zero Gun Tolerance Policy, which was not in effect when he signed his parole release papers, to him. The Zero Gun Tolerance Policy was enacted on July 14, 2004.[1] Under the Zero Gun Tolerance Policy, if a parolee is found in possession of a gun or associating with individuals who possess guns, then the parolee will be returned to prison to continue his or her sentence for five years or for the remainder of his or her maximum sentence. Petitioner's Step I Grievance Response explained:

---

[1] *See* Governor Granholm announces Zero Tolerance Policy for Parolees, Probationers involved with Guns, Office of the Governor, July 14, 2004, http://www.michigan.gov/gov/0,1607,7-168-23442_21974-97314--,00.html.

> The Parole Board's decision to continue you for 5 years was mandatory per Governor Granholm's Zero Gun Tolerance Law, which was put into effect on 07/14/04. It has been decided that the effective date of application of this initiative, as it pertains to PV Tech cases involving firearm cases, is July 15, 2004. Therefore, any case in which the violation pre-dated July 15, 2004, will not be subject to this initiative. Your violation date was after 07/14/04; therefore, you would fall under the ZGT Law. The Board's decision will not be reconsidered.

(Ex. A to Am. Pet.)

Petitioner asserts three arguments. First, Petitioner argues that the denial of his right to appeal certain parole procedures violated his procedural due process rights. Second, Petitioner asserts that he has a liberty interest in parole, and, thus, the denial of a parole hearing violated his procedural due process rights. Third, Petitioner argues that the Michigan Parole Board violated the Ex Post Facto Clause by applying the Zero Gun Tolerance Policy retrospectively, which subjected him to five years of incarceration before a parole hearing. (Br., ii-iii.)

II.     Exhaustion

Petitioner correctly states that he cannot appeal the denial of certain parole procedures. Under statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state statute. The former version of MICH. COMP. LAWS § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. See MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(11) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan

Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* MICH. CT. R. 7.104(D)(1), (2)(a). As a result, the Sixth Circuit Court of Appeals has held that a Michigan petitioner's failure to exhaust his challenge to parole procedures is excused under 28 U.S.C. § 2254(b)(1)(B)(i), because Michigan law does not provide a state corrective process for such a claim. *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005).[2] Because the state statute prohibits a prisoner from appealing a parole denial, Petitioner appears to have no available state court remedy in which to exhaust his claims. Thus, I will address the merits of his claim.

      III.    Merits

          A.    **Procedural Due Process**

Petitioner argues that the MDOC violated his procedural due process rights because (i) he cannot appeal the denial of his right to certain parole procedures; and (ii) the MDOC denied Petitioner of his right to a parole hearing when he allegedly has a liberty interest in parole. To establish a procedural due process violation for parole, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Petitioner fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S.

---

[2] The *Jackson* court referenced a previous version of the statute, MICH. COMP. LAWS § 791.234(9). This Court cites the current version of the statute, MICH. COMP. LAWS § 791.234(11), which only has been numerically amended since the *Jackson* decision. *See* MICH. COMP. LAWS § 791.234(11) (as amended by 2006 Mich. Pub. Acts 167).

1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole.  *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole.  *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21,

1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his fifteen year maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole two years after he was re-incarcerated due to his parole revocation, therefore, implicates no federal right. Accordingly, Petitioner fails to raise a meritorious claim regarding his procedural due process rights.

B.   **Ex Post Facto Clause**

Petitioner contends that the application of the 2004 Zero Gun Tolerance Policy to him after his release on parole violates the Ex Post Facto Clause. As a result of the Zero Gun Tolerance Policy, Petitioner is eligible for parole five years after he was re-incarcerated due to his parole revocation. Under the previous policy, Petitioner alleges that he would have been eligible for parole two years after he was re-incarcerated due to his parole revocation.

The Constitution's Ex Post Facto Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures

constituted the type of change in the law subject to analysis under the Ex Post Facto Clause. The Court declined to adopt an interpretation of the Clause that would "forbid[ ] any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A sufficient risk of increased punishment involves more than "some ambiguous sort of 'disadvantage'" to an inmate. *Id.* at 506 n.3.

Although a prisoner's release on parole is discretionary with the Parole Board in Michigan, see MICH. COMP. LAWS §§ 791.233e, 791.235, the Supreme Court in *Garner v. Jones*, 529 U.S. 244 (2000), observed that the "presence of discretion does not displace the protections of the Ex Post Facto Clause," as the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." *Id.* at 253. The Court further noted that, "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Id.* at 256 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (observing that the reasonableness of discretionary agency action can be gauged by reference to the agency's policies and practices)). The Court found that in deciding whether an administrative rule pertaining to Georgia's parole system violated the Ex Post Facto Clause, the lower court should have considered a policy statement where it was a "formal, published statement as to how the Board intends to enforce its Rule." *Id.* at 256-57. However, the Court explained that in the Ex Post Facto analysis, it was equally significant that,

> to the extent there inheres in *ex post facto* doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, . . ., we can say with some assurance that where parole is concerned[,] discretion, by its very definition, is subject to changes in the manner in

>which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.* at 253 (internal citations omitted).

First, it is not apparent that Petitioner's circumstances involved the retroactive application of an amendment in the law. The MDOC paroled Petitioner on December 23, 2003. The Zero Gun Tolerance Policy was enacted on July 14, 2004. As stated above, if a parolee is found in possession of a gun or associating with individuals who possess guns, then the parolee will be returned to prison to continue his or her sentence for five years or for the remainder of his or her maximum sentence under the Zero Gun Tolerance Policy.[3] Petitioner violated parole on October 27, 2005. Because Petitioner violated parole after the enactment of the policy, the policy applies to his parole eligibility. Therefore, Petitioner is not eligible for parole for five years after he was re-incarcerated due to his parole revocation.

Even if the Zero Gun Tolerance Policy is a retroactive change in the law, Petitioner fails to raise a meritorious federal claim. It is clear that the controlling inquiry is whether the retroactive application of an amendment to a law or later enacted law or policy will create a sufficient risk of increasing the measure of punishment attached to a particular crime. *See Garner*, 529 U.S. at 250; *Morales*, 514 U.S. at 509; *Michael v. Ghee*, 498 F.3d 372, 381-83 (6th Cir. 2007) (the relevant inquiry is whether the new parole guidelines present a significant risk of increasing the plaintiff's amount of time actually served). If a parolee violates the Zero Gun Tolerance Policy, then the parolee is returned to prison to continue his or her sentence for five years or for the remainder

---

[3]*See* Governor Granholm announces Zero Tolerance Policy for Parolees, Probationers involved with Guns, Office of the Governor, July 14, 2004, http://www.michigan.gov/gov/0,1607,7-168-23442_21974-97314--,00.html.

of his or her maximum sentence.  Petitioner violated the Zero Gun Tolerance Policy on October 27, 2005.  At that time, approximately seven years remained on Petitioner's maximum sentence.  Petitioner's allegations fail to suggest that the application of the Zero Gun Tolerance Policy will create a significant risk of increasing his punishment.  Therefore, Petitioner's claim is insufficient to implicate the Ex Post Facto Clause.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the amended habeas corpus petition be summarily dismissed pursuant to Rule 4 because Petitioner fails to raise a meritorious federal claim. I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Date:  August 28, 2008                             /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).